BILL V. BELL, Adm'r of the Estate of Jack W. Bell, Deceased, *et al.*, Plaintiffs-Appellees, *v.* RANDOLPH REID *et al.*, Defendants-Appellants.

Fifth District   No. 83—142

Opinion filed September 23, 1983.

Jerome E. McDonald, of Campbell, Furnall, Moore & Jacobsen, P.C., of Mt. Vernon, for appellants.

Feiger, Quindry, Molt, Harvey, Fyie & Hawkins, of Fairfield (Morris Lane Harvey, of counsel), for appellees.

JUSTICE KARNS delivered the opinion of the court:

The circuit court of Wayne County entered judgment in favor of plaintiffs, Bill V. Bell, administrator of the estate of Jack W. Bell, and Deborah K. Bell, in their actions for wrongful death and personal injuries arising out of the negligent operation of a motor vehicle by defendant, Randolph Reid, alleged to be the agent and servant of

defendant, Fillmore Reid. The court granted plaintiffs' motions for directed verdict at the close of all the evidence. Only Fillmore Reid appeals.

In September 1979, Jack W. Bell was killed and plaintiff Deborah K. Bell was severely injured when the motorcycle on which they were riding collided with a pickup truck owned by defendant Fillmore Reid and operated by defendant Randolph Reid on the Mt. Erie-Cisne blacktop at a point approximately nine miles east of its intersection with U.S. Route 45 in Wayne County. Plaintiffs' six-count amended complaint contained three theories of recovery. Both plaintiffs alleged negligent operation of a motor vehicle against Randolph; negligent entrustment of a motor vehicle against Fillmore; and vicarious liability against Fillmore for the alleged negligence of Randolph committed while in the scope of his employment with Fillmore. The court found that the evidence established Randolph's negligence and the existence of an agency relationship between the two defendants at the time of the occurrence described in the complaint and further established that Fillmore negligently entrusted his vehicle to Randolph.

The directed verdict finding Randolph liable is not contested. The inquiry here is limited to whether the trial court erred in directing a verdict as to Fillmore under the familiar test established by our supreme court in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

A substantial amount of evidence presented involved proof of what Fillmore Reid either knew or did not know regarding Randolph's previous driving record. Plaintiffs attempted to show Fillmore's knowledge of Randolph's violations of the Motor Vehicle Code in an attempt to prove that he negligently entrusted his vehicle to Randolph on the day in question. Defendants introduced evidence tending to show Fillmore's lack of knowledge about such incidents. While we question the propriety of the court's directed verdict on these counts, since defendants presented contrary evidence thus creating a question of fact, we need not pass upon this issue. Where there are two grounds for recovery pleaded in support of the same demand, the judgment may stand if either ground is sufficient to sustain it. See *Moore v. Jewel Tea Co.* (1970), 46 Ill. 2d 288, 263 N.E.2d 103; Ill. Rev. Stat. 1981, ch. 110, par. 2—1201(d).

Randolph Reid is the grandson of Fillmore and Edna Reid. He first came to live with his grandparents near Cisne around 1961. He resided with them until 1968 when he went to live with his mother in California. He returned to live with his grandparents in July 1979 and was residing there on their farm at the time of the accident in ques-

tion.

In September 1979, Randolph was a full-time employee of the Barr Drilling Company. Both grandparents testified that Randolph also performed various types of chores around their farm incidental to that type of living. He took care of some animals, repaired fences and did maintenance work on the buildings when needed.

On September 10, 1979, Randolph drove away from the farm in Fillmore's pickup truck at approximately 1:15 p.m. Through the testimony of both grandparents, it was established that he intended to go to Olney, 30 miles away. Edna Reid testified that she did not know what Randolph was going to do in Olney but Fillmore testified that Randolph "*** went over there to see about a tire and the battery [for one of my tractors.]" That was the last either of them heard from Randolph until the following morning when they learned that he had been involved in an accident the previous evening. The accident occurred at approximately 6 p.m., about five hours after Randolph had left the farm.

In order for the owner of a motor vehicle to be held liable for the negligent operation of the vehicle by another, it must be shown that the relationship of principal and agent, or master and servant, existed between the owner and the driver at the time of the negligent operation. "It is unquestioned that, as a matter of evidence, mere proof of one defendant's ownership of an automobile driven by another defendant is *prima facie* proof of agency, which if not rebutted will support a judgment for plaintiff, insofar as the proposition of agency is concerned." (*Parrino v. Landon* (1956), 8 Ill. 2d 468, 470, 134 N.E.2d 311, 312.) In the instant case, plaintiffs' evidence made out a *prima facie* case of agency between Fillmore and the driver of his vehicle in that it showed unquestionably that Fillmore owned the vehicle involved. In fact, Fillmore admitted ownership. While plaintiffs retained their overall burden of proof, it was then incumbent upon defendants to go forward and introduce evidence to show that the driver was in fact not acting in the capacity of an agent at the time of the mishap in order to meet plaintiffs' *prima facie* case. (*McElroy v. Force* (1967), 38 Ill. 2d 528, 232 N.E.2d 708.)

> "*** [A] very good reason for attaching to proof of ownership on the part of the plaintiff, or an admission to that effect by the defendant, a presumption that the driver of the automobile was the defendant's servant and engaged in his business at the time and place in question, is to be found in the fact, which is pointed out in a number of the decisions, that, if the defendant is in fact the owner of the automobile, it should be an easy

matter for him to bring forward evidence showing that the driver was not his servant or that he (the defendant) had no business occasioning such use as the driver was making of the car, at the time and place of the accident, while it would ordinarily be a difficult thing for the plaintiff to establish the contrary." (*Howard v. Amerson* (1925), 236 Ill. App. 587, 594.)

If no such proof is offered, the presumption will prevail and will alone support a finding. When there is any evidence which tends to show the driver's nonagent status, the question of agency is for the jury. Whether there is any such evidence is a question of law and on appeal the reviewing court can examine the record to determine whether such evidence exists.

■ The parties have placed major significance upon the alleged employer-employee relationship between Fillmore and Randolph; however, the presumption of agency often arises in situations other than those where there is at issue a question of employer-employee status. (See generally *McElroy v. Force* (1967), 38 Ill. 2d 528, 232 N.E.2d 708 (owner-driver, unrelated passenger); *Parrino v. Landon* (1956), 8 Ill. 2d 468, 134 N.E.2d 311 (owner-nonpassenger, related driver); *Ritter v. Taucher* (1978), 65 Ill. App. 3d 464, 382 N.E.2d 343 (owner-passenger, related driver).) Plaintiffs need not necessarily prove an employer-employee relationship for the presumption to obtain. Indeed, plaintiffs need to prove only that upon which the presumption is predicated unless the defendant introduces evidence contrary to it. It is clear that plaintiffs were not relying solely upon the effect of the presumption because they introduced evidence tending to show that there actually was an employer-employee relationship. Whether there was such a relationship is immaterial. Defendnat Fillmore was met with the burden of going forward to rebut the presumption, be it in the form of evidence contrary to the alleged relationship or in the form of any other evidence contrary to the effect of the presumption. This he failed to do.

■ The only evidence presented by defendants that tended to rebut the presumption in plaintiffs' favor consisted of the testimony of Fillmore's wife and testimony of several witnesses establishing a five-hour time gap between the time Randolph left the farm and the time of the collision. Edna Reid testified that she did not hear Randolph specifically state that he was going to Olney at Fillmore's request. She also testified that Randolph used Fillmore's vehicle regularly for personal purposes since his car was out of order. In contrast, Fillmore's unrebutted testimony established his acquiescence in Randolph's declared purpose to him of a proposed trip to Olney to obtain

parts for the family-owned tractor. Randolph did not testify. Defendants presented no evidence as to where Randolph was during the five-hour time span nor as to any personal purpose he may have had for this particular trip. Simply stated, the presumption remained in effect standing unrebutted. We conclude that the evidence presented, even when viewed in its aspect most favorable to Fillmore Reid, so overwhelmingly favored plaintiffs that a contrary verdict could never stand.

The judgment of the circuit court of Wayne County is affirmed.

Affirmed.

JONES and KASSERMAN, JJ., concur.