WILLIE GILES, Plaintiff-Appellant, v. GENERAL MOTORS CORPOR-ATION, Defendant-Appellee.

Fifth District   No. 5—02—0709

Opinion filed December 18, 2003.

Marvin L. Levinson, of East St. Louis, for appellant.

Annie K. Strobl, Hugh G. McBreen, and Dragan Ivetic, all of McBreen & Kopko, of Chicago, for appellee.

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

The plaintiff, Willie Giles, is employed by the defendant, General Motors Corp. (GM). GM had been withholding a portion of the plaintiff's wages pursuant to a withholding order entered in St. Clair County under the Income Withholding for Support Act (Act) (750 ILCS 28/1 *et seq.* (West 2000)). The order set forth a termination date for withholding; nevertheless, GM withheld for 2$\frac{1}{2}$ years beyond that date. The plaintiff filed a complaint against GM. The complaint set forth claims for negligence, breach of contract, and conversion and sought the return of the wages that GM had withheld beyond the order's termination date, plus interest and costs. The plaintiff sought punitive damages on his negligence and conversion claims. In response, GM filed a motion for an involuntary dismissal pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 2002)). GM also filed an offer of a judgment in the amount of $15,113.11, representing the amount it had withheld from the plaintiff's wages after the termination date, plus a $200 fine allowed by section 50 of the Act (750 ILCS 28/50 (West 2000)). On September 18, 2002, the trial court entered an order granting GM's section 2—619 motion, dismissing all three counts of the plaintiff's complaint with prejudice and directing GM to tender to the plaintiff $15,113.11 in satisfaction of its offer of a judgment. The plaintiff appeals and we reverse and remand.

# I. BACKGROUND

This appeal arises from a withholding order entered in St. Clair County under the Act on February 27, 1996, which required GM to withhold $122.47 per week from the plaintiff's wages for current support and $25 per week on an arrearage. The order, entered in the plaintiff's marriage dissolution proceeding, Willie Giles v. Katherine Giles, cause No. 88—D—213, directed GM to deposit the income it withheld with the clerk of the circuit court in St. Clair County for disbursement to Katherine. The withholding order stated that a support order was being entered on the same day and was to terminate on February 9, 1998.

GM withheld the amounts set forth in the withholding order and deposited the sums with the clerk of court, who then disbursed the money to Katherine. GM, however, withheld income from the plaintiff's wages $2^{1}/_{2}$ years beyond the termination date—up to August 24, 2000. The extra withholding totaled $14,913.11. The plaintiff alleged that during the $2^{1}/_{2}$ years, he had asked GM several times to stop withholding income, to no avail, and, further, that after GM stopped withholding income, his counsel asked GM to reimburse the amount wrongfully withheld, which GM refused to do. This conduct forms the basis of the plaintiff's prayer for punitive damages. (The record does not indicate what prompted GM to finally cease withholding income from his wages on August 24, 2000.) On November 3, 2000, the trial court entered an order in the dissolution proceeding confirming that the support and withholding orders served on GM had terminated on February 9, 1998.

On April 1, 2002, the plaintiff filed a complaint setting forth claims against GM for negligence, breach of contract, and conversion. He sought the return of the income that GM had withheld beyond the court-imposed termination date, plus interest and costs. He also prayed for punitive damages in his negligence and conversion counts, alleging that GM had exhibited a willful and wanton pattern of conduct in complete disregard of his rights by (1) continuing to withhold income from his wages in violation of the withholding order after being asked to stop withholding and (2) refusing to reimburse him after it had stopped withholding.

■ GM filed a motion to dismiss pursuant to section 2—619(a)(9) of the Code of Civil Procedure. This section provides that a complaint may be dismissed when it is barred by an affirmative matter avoiding the legal effect of or defeating the claim. 735 ILCS 5/2—619(a)(9) (West 2002). The phrase "affirmative matter" in this subsection refers to the type of defense that either negates an alleged cause of action completely or refutes crucial conclusions of law or material fact unsup-

ported by factual allegations in the complaint or inferred therefrom. *Krilich v. American National Bank & Trust Co. of Chicago,* 334 Ill. App. 3d 563, 570, 778 N.E.2d 1153, 1160 (2002). GM's motion advanced three reasons for a dismissal: (1) that count I for negligence should be dismissed because punitive damages cannot be recovered for ordinary negligence, (2) that counts II and III for conversion and breach of contract should be dismissed because GM's conduct was mandated by law and because it acted in good-faith reliance on a court order, and (3) that all three counts should be dismissed because the plaintiff's only recourse is under the Act and the Act does not allow for the imposition of punitive damages.

GM filed a motion titled "Offer of a Tender of Settlement[ ] or[,] in the alternative, Judgment" on the same day it filed its motion to dismiss. The offer was in the amount of $15,113.11, representing the amount of income it had withheld from the plaintiff's wages after the termination date, plus the $200 fine allowed by section 50 of the Act. The motion stated that GM sought an order from the court accepting its offer in satisfaction of the plaintiff's claim and dismissing the plaintiff's complaint as moot or, alternatively, entering a judgment in favor of the plaintiff in the amount of $15,113.11. The plaintiff filed a response to GM's motion and stated that he would accept a partial judgment for the sum of $14,913.11 plus interest at 6% per annum from February 9, 1998, but he requested that the cause be set for further proceedings on the issue of punitive damages.

The trial court entered an order granting GM's section 2—619 motion, dismissing all three counts of the plaintiff's complaint with prejudice. It then directed GM, in accordance with section 50 of the Act (750 ILCS 28/50 (West 2002)), to tender to the plaintiff GM's $15,113.11 offer of a judgment—representing the plaintiff's wages GM had withheld after the withholding order had terminated, plus the maximum "fine" authorized by the Act. The plaintiff appeals this order.

Because the material facts are largely undisputed, our review of this matter is limited to whether the dismissal was proper as a matter of law. See *Kedzie & 103rd Currency Exchange, Inc. v. Hodge,* 156 Ill. 2d 112, 116-17, 619 N.E.2d 732, 735 (1993). The facts and evidence must be viewed in the light most favorable to the nonmoving party. *Saxon Mortgage, Inc. v. United Financial Mortgage Corp.,* 312 Ill. App. 3d 1098, 1104, 728 N.E.2d 537, 541 (2000). A section 2—619 motion to dismiss should not be granted when it cannot be determined with reasonable certainty that the movant's alleged defense exists. *Saxon Mortgage, Inc.,* 312 Ill. App. 3d at 1104, 728 N.E.2d at 541.

An involuntary dismissal under section 2—619 of the Code of Civil

Procedure is subject to *de novo* review on appeal. Our review of the trial court's interpretation of a statute is also *de novo*. *Grams v. Autozone, Inc.*, 319 Ill. App. 3d 567, 569, 745 N.E.2d 687, 689 (2001). Where, as in this case, the trial court does not specify the grounds for its order dismissing the plaintiff's complaint, we will presume it was upon one of the grounds properly urged by GM, and we will address the merits of each. *Zielinski v. Miller*, 277 Ill. App. 3d 735, 739, 660 N.E.2d 1289, 1293 (1995). Having reviewed the facts and the evidence in the light most favorable to the plaintiff, we reverse and remand this cause to the trial court for further proceedings.

## II. ANALYSIS

### A. The Income Withholding for Support Act

The threshold question we must answer is whether the plaintiff's relief is limited by the Act. We find that this question is easily resolved by referring to the language in the statute itself.

■ The overriding precept of statutory construction is for the court to ascertain and to give effect to the true intent of the legislature. *Grams*, 319 Ill. App. 3d at 569, 745 N.E.2d at 690. Our first step in determining the legislature's intent is to consider the language of the statute. We may look beyond the language of the statute only where we find an ambiguity or where a literal interpretation of the statute would lead to an absurd result. When the language is clear and unambiguous, we should give it effect without resorting to other aids for construction. *Grams*, 319 Ill. App. 3d at 570, 745 N.E.2d at 690.

■ Here, the language of the Act, set forth below, is neither ambiguous nor absurd; on the contrary, it clearly states its purpose and scope. Section 15 of the Act defines the parties' roles: under these definitions, Willie is an "obligor," Katherine is an "obligee," and GM is a "payor." 750 ILCS 28/15 (West 2000). Section 35 provides, in relevant part, what the payor's duties are under the Act:

"(a) It shall be the duty of any payor *** to deduct and pay over income ***. The payor shall deduct the amount designated in the income withholding notice ***. *** The payor shall pay the amount withheld to the State Disbursement Unit ***. ***

\* \* \*

(d) No payor shall discharge, discipline, refuse to hire[,] or otherwise penalize any obligor because of the duty to withhold income." 750 ILCS 28/35(a), (d) (West 2000).

The Act also regulates the content of the withholding notice. Section 20(c) of the Act states in part:

"(c) The income withholding notice shall:

\* \* \*

(7) state the duties of the payor and the fines and penalties for failure to withhold and pay over income and for discharging, disciplining, refusing to hire, or otherwise penalizing the obligor because of the duty to withhold and pay over income under this Section; and

\* \* \*

(10) include the date that withholding for current support terminates, which shall be the date of termination of the current support obligation set forth in the order for support[.]" 750 ILCS 28/20(c)(7), (c)(10) (West 2000).

Section 50 sets forth the remedies and penalties that apply when the payor fails to comply with duties imposed by the Act. Section 50 states:

"(a) Where a payor wilfully fails to withhold or pay over income pursuant to a properly served income withholding notice[ ] or wilfully discharges, disciplines, refuses to hire[,] or otherwise penalizes an obligor as prohibited by Section 40[ ] or otherwise fails to comply with any duties imposed by this Act, the obligee, public office[,] or obligor, as appropriate, may file a complaint with the court against the payor. The Clerk of the Circuit Court shall notify the obligee or public office, as appropriate, and the obligor and payor of the time and place of the hearing on the complaint. The court shall resolve any factual dispute including, but not limited to, a denial that the payor is paying or has paid income to the obligor. Upon a finding in favor of the complaining party, the court:

(1) shall enter judgment and direct the enforcement thereof for the total amount that the payor wilfully failed to withhold or pay over; and

(2) may order employment or reinstatement of or restitution to the obligor, or both, where the obligor has been discharged, disciplined, denied employment[,] or otherwise penalized by the payor and may impose a fine upon the payor not to exceed $200.

(b) Any obligee, public office[,] or obligor who wilfully initiates a false proceeding under this Act or who wilfully fails to comply with the requirements of this Act shall be punished as in cases of contempt of court." 750 ILCS 28/50 (West 2000).

Finally, section 60 of the Act states, in relevant part:

"(a) The rights, remedies, duties[,] and penalties created by this Act are in addition to and not in substitution for any other rights, remedies, duties[,] and penalties created by any other law." 750 ILCS 28/60(a) (West 2000).

GM argued to the trial court that all three counts of the plaintiff's complaint should be dismissed because his only recourse is under the Act, which does not allow for the imposition of punitive damages. Ac-

cording to GM, section 50 sets forth the maximum remedy and penalty that it could anticipate in this case—*i.e.*, the return of income withheld beyond the termination date and a $200 fine. On appeal, GM makes the related argument that the Act is triggered because the plaintiff's claims clearly arise from the withholding order. As further support for limiting the remedies and penalties in this case to those in the Act, GM points out that section 20 requires a withholding notice to inform the employer of all of its rights, duties, and obligations under the Act and that this court should not read a remedy into the Act which is not there. We disagree entirely with GM.

■ The Act imposed two primary duties on GM—to withhold income from the plaintiff's wages and to pay the income over to the State Disbursement Unit. 750 ILCS 28/35 (West 2000). The remedies and penalty established by the legislature only remedy and penalize a payor's breach of these *specific* duties. According to the withholding order, GM's duty to withhold and pay over ended on February 9, 1998. It was GM's conduct *subsequent* to that date that gave rise to the plaintiff's claims. The plaintiff does not contend that GM breached its duties under the Act, nor does he even cite the Act in his complaint. The Act does not control the issue before us because it does not address the conduct complained of by the plaintiff. Additionally, section 60(a) of the Act clearly states that the rights, remedies, duties, and penalties created by it are in addition to any other rights, remedies, duties, and penalties created by any other law. 750 ILCS 28/60(a) (West 2000). The express unambiguous language of this section reveals that the legislature intended to supplement the remedies and penalties afforded to all parties by other laws, not to restrict them. Consequently, the Act did not afford the trial court a proper basis to dismiss the plaintiff's suit.

Accordingly, we find error in the dismissal of counts I, II, and III of the plaintiff's complaint with prejudice and reverse the trial court's order dismissing the plaintiff's claims. We must now consider what effect our findings have on the trial court's order directing GM to tender $15,113.11 to the plaintiff in satisfaction of its offer of a judgment.

In its motion titled "Offer of a Tender of Settlement[ ] or[,] in the alternative, Judgment", GM stated that because the plaintiff was only entitled to restitution and a $200 fine under the Act, its tender of the same made the plaintiff whole and rendered his claims moot. It appears that the trial court held a similar belief because its order states that the relief it afforded was in accordance with the Act. However, because we find that the Act does not control the relevant issues in this case, the trial court's order directing GM to tender $15,113.11 to the plaintiff in satisfaction of its offer must be vacated. Thus, we need

not decide whether a tender offered in accordance with the Act eliminates the legal controversy, nor need we pass on whether the trial court erred in calculating the amount it awarded to the plaintiff under the Act.

## B. Other Affirmative Matters Alleged by GM Barring the Plaintiff's Claims

We now turn to consider the merits of GM's arguments not dependent on the Act. GM argued to the trial court in its motion to dismiss that count I of the plaintiff's complaint, which states a claim against GM for negligence, must be dismissed because the law does not permit the imposition of punitive damages for conduct which constitutes ordinary negligence. GM argued that counts II and III, for conversion and breach of contract respectively, must be dismissed because GM withheld income from the plaintiff's wages under the color of law. We disagree with both contentions.

### 1. *Negligence and Punitive Damages*

The plaintiff alleged in count I of his complaint that GM was negligent by (1) failing to pay attention to the termination date in the withholding order, (2) refusing to obey the order, and (3) failing to obey the order even after the termination date was brought to its attention. In seven distinct numbered paragraphs count I of the plaintiff's complaint also sets forth the alleged willful and wanton nature of GM's conduct. The allegations, if believed by the fact finder, would demonstrate that GM ignored the plaintiff's requests to terminate withholding income from his wages in violation of the withholding order. Proven allegations would further demonstrate GM's callousness in refusing to reimburse the plaintiff for income it wrongfully withheld, even in the face of a subsequent court order confirming the termination date and after having received two letters from the plaintiff's counsel. More particularly, the plaintiff alleges: "[GM] has exhibited a willful and wanton pattern of behavior, disregarding the rights of the plaintiff. Alternatively, [GM] has shown recklessness and indifference towards the rights of the plaintiff, entitling [the] plaintiff to punitive damages."

GM argued to the trial court that count I should be dismissed because it was labeled "negligence" and because it pleaded only inadvertence, mistake, and errors of judgment. GM believed that count I stated a claim for ordinary negligence, for which punitive damages may not be imposed. GM further argued that even if the plaintiff's allegations of negligence were proven, they do not rise to the level of willful or wanton behavior. We disagree.

■ It is well-settled in Illinois that punitive damages may be

awarded when a defendant acts willfully or with such gross negligence as to indicate a wanton disregard of the rights of others. *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 186, 384 N.E.2d 353, 359 (1978). Punitive damages act as a punishment for willful or outrageous conduct and as a warning to deter a defendant and others from committing similar offenses in the future. *Kelsay*, 74 Ill. 2d at 186, 384 N.E.2d at 359. However, Illinois case law has not been consistent on what kind of tortious behavior beyond ordinary negligence can be construed as willful and wanton conduct. See *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 641 N.E.2d 402 (1994) (for a discussion of our state's diverse jurisprudence). Decisions in this state have observed the thin line and similar characteristics between ordinary negligence and willful and wanton conduct. *Ziarko*, 161 Ill. 2d at 275, 641 N.E.2d at 406. As a result, the Illinois Supreme Court has discouraged an application of a hard-and-fast rule and stated, "Under the facts of one case, willful and wanton misconduct may be only degrees more than ordinary negligence, while under the facts of another case, willful and wanton acts may be only degrees less than intentional wrongdoing." *Ziarko*, 161 Ill. 2d at 275-76, 641 N.E.2d at 406. Indeed, this court has stated that punitive damages are recoverable where negligent conduct is accompanied by acts committed with malice or reckless indifference to the rights of others. *Doe v. Chand*, 335 Ill. App. 3d 809, 819, 781 N.E.2d 340, 349 (2002).

■ We are cognizant that in Illinois punitive damages are not awarded for acts of ordinary negligence, but we believe that the plaintiff pleads substantially more than a simple negligence claim. In advancing the argument that the allegations in count I constitute ordinary negligence, GM reads the plaintiff's negligence allegations in a vacuum and completely ignores one-third of the count. No single factual allegation can answer the question of whether punitive damages may be claimed. Viewing the count as a whole, we believe that the plaintiff has pleaded willful and wanton conduct in conjunction with allegations of negligence on the part of GM for which punitive damages may be awarded if supported by the evidence.

It should be noted that had we found that punitive damages were not recoverable on the claim as stated in count I, such a finding would not warrant a dismissal of count I with prejudice. Rather, the appropriate relief would have been either to allow the plaintiff to amend his complaint or to strike his request for punitive damages. A dismissal of the entire count with prejudice would not be proper under these circumstances.

## 2. *Defense of Good-Faith Reliance on the Court Orders and the Act*

■ Nor are we convinced that a dismissal of counts II and III was

warranted on the basis that GM's conduct was mandated by law. GM argues that it cannot be held liable on the plaintiff's claims for conversion or breach of contract because it withheld income from his wages pursuant to and in good-faith reliance on a variety of court orders and the Act. In advancing this argument, not only does GM ignore the fact that the withholding order, by its express terms, was subject to termination on February 9, 1998, but it also ignores a subsequent court order of November 3, 2000, confirming the termination date.

GM does not deny that it had a valid withholding order in its possession that spelled out the terms of its duties. All GM had to do was to read the order to know that it was required to stop withholding on February 9, 1998. GM has offered no legal authority or credible facts to support its contention that its withholding of income from the plaintiff's wages beyond the termination date was in accordance with a court order, under color of law, or otherwise mandated by law. We disregard the cases GM cites in its brief on appeal because they are completely irrelevant to the issue before us factually and legally. The cases GM cites in its motion to dismiss are inapposite because the parties in those cases were justified in engaging in the conduct complained of. See *Andrews v. Mid-America Bank & Trust Co. of Fairview Heights*, 152 Ill. App. 3d 139, 141-42, 503 N.E.2d 1120, 1122 (1987); *Levy v. Johnston & Hunt*, 224 Ill. App. 300 (1922). Because GM's argument that it withheld income from the plaintiff's wages in good faith is without any merit, the dismissal of counts II and III of the plaintiff's complaint with prejudice on this basis was in error.

### C. The Plaintiff's Claim for Interest and Attorney Fees

The plaintiff requested interest at the rate of 6% per annum and attorney fees in his prayers for relief in all three counts of his complaint. On appeal GM argues that the trial court properly denied the plaintiff's request for interest and fees. However, GM did not brief these matters in its motion to dismiss before the trial court, nor does the order entered by the trial court reflect that it dismissed the plaintiff's claims on these bases. Because these matters are not properly before us, we decline to pass on the propriety of the plaintiff's request for interest and attorney fees.

### III. CONCLUSION

Viewing the pleadings in the light most favorable to the plaintiff, we find that the trial court erred in dismissing the plaintiff's complaint pursuant to section 2—619 of the Code of Civil Procedure. We reverse the trial court's order dismissing all three counts of the plaintiff's complaint with prejudice, vacate the trial court's order directing GM to tender $15,113.11 to the plaintiff, and remand this cause for further

proceedings consistent with this opinion. Costs on appeal shall be awarded to the plaintiff in accordance with Supreme Court Rule 374 (155 Ill. 2d R. 374).

Reversed; cause remanded.

WELCH and MAAG, JJ., concur.